TOM JAMES OF DALLAS, INC., d/b/a Tom James of Dallas # 80, d/b/a Tom James Company, and d/b/a Tom James of Dallas, Appellant,

v.

Chris E. COBB, James D. Knight, Pat May, and Michael A. Moon, Appellees.

No. 05–02–00449–CV.

Court of Appeals of Texas, Dallas.

July 11, 2003.

Julia F. Pendery, Goodwin Gruber, P.C., Dallas, for Appellant.

T. Wesley Holmes, Andrew T. Turner, Fisher, Holmes & Turner, Dallas, Joel Pate Smyer, Howell, Dorman, Anderson & Smyer, Fort Worth, Kevin Wayne Vice, Sifford, Anderson, Vice, & MacFarlane, Dallas, for Appellee.

Before Justices MORRIS, MOSELEY, and FRANCIS.

## OPINION

Opinion By Justice MOSELEY.

Tom James of Dallas, Inc., d/b/a Tom James of Dallas # 80, d/b/a Tom James Company, and d/b/a Tom James of Dallas (Tom James), appeals the denial of its application for a temporary injunction against Chris E. Cobb, James D. Knight, Pat May, and Michael A. Moon (appellees). In three issues, Tom James argues its non-compete covenants with appellees were enforceable; certain information acquired by appellees from Tom James was confidential and constituted trade secrets; and that although proof of irreparable harm was unnecessary, Tom James showed it would suffer irreparable harm if the temporary injunction was not granted. Tom James requests that we reverse the trial court's order denying its application for temporary injunction and remand the case with orders that the trial court grant the temporary injunction as requested. We affirm.

### BACKGROUND

Appellees were salesmen for Tom James, a custom clothing manufacturer that sells ready-made and custom clothing directly to customers. Appellees signed employment agreements containing covenants not to compete against Tom James for a period of two years after appellees left the company. The agreements also contained provisions preventing appellees from disclosing any confidential information or trade secrets of Tom James acquired during their employment for two

years after that employment was terminated.

In January 2002, Appellees left Tom James and began selling custom clothing in their former sales territories. Tom James sued for breach of the employment agreements, breach of fiduciary duty, misappropriation of trade secrets, unfair competition, tortious interference with contract and prospective economic relationships, and theft of trade secrets. Tom James alleged that when appellees left, they took Tom James's confidential and trade secret information with them, including customer lists, documents, and computerized information. Tom James obtained a temporary restraining order, and requested temporary and permanent injunctions to enforce the covenants not to compete and to prevent disclosure and use of the allegedly confidential and trade secret information. After hearing testimony over four days, the trial court denied Tom James's application for a temporary injunction. Tom James filed an interlocutory appeal of this order.

While this accelerated appeal was pending, appellees filed a motion for summary judgment in the trial court, which the trial court granted on December 24, 2002.[1] The interlocutory summary judgment became final on February 12, 2003 when the trial court signed an order granting appellees' non-suit of their counterclaim for attorneys' fees. Normally, this would have rendered moot the interlocutory appeal of the order denying the temporary injunction. See Isuani v. Manske–Sheffield Radiology Group, P.A., 802 S.W.2d 235, 236 (Tex.1991); Save Our Springs Alliance, Inc. v. Austin Indep. Sch. Dist., 973 S.W.2d 378, 384 (Tex.App.-Austin 1998, no pet.). However, Tom James timely filed a motion for new trial and to reconsider the summary judgment.

On April 24, 2003, the trial court entered an order granting Tom James's motion for new trial. The order states:

> After reconsideration of Defendants' Motion for Summary Judgment, the Court denies it and awaits the decision of the Court of Appeals for further action on this case.
>
> IT IS, THEREFORE, ORDERED that the order granting summary judgment to Defendants signed by the court on December 24, 2002, is VACATED. Defendants' Motion for Summary Judgment is DENIED. The case will be abated until Plaintiff's interlocutory appeal is decided by the Fifth District Court of Appeals.

Thus, there is no final judgment and the interlocutory appeal is not moot.

## SCOPE AND STANDARD OF REVIEW

 The purpose of the temporary injunction is to preserve the status quo until the case can be tried on its merits. *Rugen v. Interactive Business Systems, Inc.*, 864 S.W.2d 548, 550 (Tex.App.-Dallas 1993, no pet.). An applicant for a temporary injunction must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Thus, the legal issues before the trial court at a temporary injunction hearing are whether the applicant showed a probability of success and irreparable injury; the underlying merits of the controversy are not presented. Concomitantly, any appeal of an order granting or denying a

1. An appeal from an interlocutory order granting or denying a temporary injunction does not stay the commencement of trial in the trial court pending resolution of the appeal. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(b) (Vernon Supp.2003).

temporary injunction based on a covenant not to compete does not present for appellate review the ultimate question of whether the covenant is enforceable under section 15.50 of the business and commerce code. TEX. BUS. & COM.CODE ANN. § 15.50 (Vernon 2002). *See Diesel Injection Servs., Inc. v. Renfro,* 656 S.W.2d 568, 575–76 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.) (prior appeals of denial of temporary injunction did not determine reasonableness of non-compete covenant because review was restricted to abuse of discretion; review in appeal from trial on merits is not so restricted). We review only the trial court's exercise of discretion in determining that Tom James did not show that it would likely succeed on the merits of the issue at final trial. We reverse a temporary injunction order only if we determine that the record shows the trial court clearly abused that discretion. *Rugen,* 864 S.W.2d at 550–51.

In making that determination on appeal, we do not substitute our judgment for that of the trial court, but determine only whether the court's action was so arbitrary as to exceed the bounds of reasonable discretion. *Id.* at 551. We draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment. *Id.* When the trial court bases its decision on conflicting evidence, there is no abuse of discretion. *Id.* However, the trial court abuses its discretion when it misapplies the law to established facts or when the evidence does not reasonably support the trial court's determination of the existence of probable injury or probable right of recovery. *Id.* at 551. We do review de novo any determinations on questions of law the trial court made in support of its order. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). However, we only review the trial court's decision on the issues before the court.

The trial court's order denying the application for temporary injunction states in part:

The Court specifically finds that Plaintiff has not demonstrated that the information gathered by Defendants during and in the course of their employment with Plaintiff constituted "trade secrets" or was otherwise confidential and proprietary.

The Court further specifically finds that the non-compete agreements in question were made without consideration given by Plaintiff and are not ancillary to an otherwise enforceable agreement.

The Court finally finds that Plaintiff has demonstrated no likelihood of imminent or irreparable harm in the event the Application is denied. While the Court notes that such a showing may not be required under the Covenants Not to Compete Act, TEX. BUS. & COM. CODE ANN. §§ 15.50, 15.51(a), *Butler v. Arrow Mirror & Glass, Inc.,* [51 S.W.3d 787] (Tex.App.-Houston [1st Dist.] 2001), the requirement is still applicable to a trade-secrets case where the covenants have been held to be unenforceable, as here.

Tom James states that it recognizes the ultimate merits of the case are not presented in an application for temporary injunction. However, based on the wording of the second paragraph of the trial court's order quoted above, it argues the trial court in fact reached the ultimate legal question of the enforceability of the covenants not to compete. On that basis, Tom James invites us to reach the merits of the case, apply a de novo standard of review, and hold that the covenants not to compete are enforceable under section 15.50. TEX. BUS. & COM.CODE ANN. § 15.50. Notwithstanding the breadth of the trial

court's language, we decline this invitation for several reasons.

First, the above "findings" do not meet the requirements of Texas Rule of Civil Procedure 299a. *See* TEX.R. CIV. P. 299a (requiring findings of fact to be separately filed and not simply recited in judgment); *Casino Magic Corp. v. King,* 43 S.W.3d 14, 20 n. 6 (Tex.App.-Dallas 2001, pet. denied). Accordingly, in this case we use the standard of review applicable to cases where no findings have been requested or filed. *See id.* Where no findings of facts or conclusions of law are filed, the trial court's determination of whether to grant or deny a temporary injunction "must be upheld on any legal theory supported by the record." *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978).

Moreover, even if we considered the language embedded in the trial court's order to constitute findings of fact and conclusions of law, such findings and conclusions do not control the outcome of this case. In an appeal from an interlocutory order, the trial judge may file findings and conclusions, but is not required to do so. TEX. R.APP. P. 28.1. *See Humble Exploration Co. v. Fairway Land Co.,* 641 S.W.2d 934, 937 (Tex.App.-Dallas 1982, writ ref'd n.r.e.). Findings of fact and conclusions of law filed in conjunction with an order on interlocutory appeal may be "helpful" in determining if the trial court exercised its discretion in a reasonable and principled fashion. *See Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 852 (Tex.1992) (orig.proceeding) (mandamus review of sanction order). However, they do not carry the same weight on appeal as findings made under rule 296, and are not binding when we are reviewing a trial court's exercise of discretion. *See IKB Indus., Ltd. v. Pro-Line Corp.,* 938 S.W.2d 440, 442 (Tex. 1997).

Second, we decline to address the ultimate issue of the enforceability of the non-compete agreements based on the language set forth in the second paragraph quoted above because the functions of a temporary injunction hearing and a trial on the merits are different:

> [O]ur system of procedure is such that legal rights cannot be finally determined upon a hearing relating to the wisdom or expediency of issuing a status quo order. Deliberate action is essential for the accurate determination of legal rights and upon occasion this can be secured only by issuing a temporary decree protecting a status quo. Ordinarily, the hearing upon the temporary injunction is not a substitute for, nor does it serve the same purpose as the hearing on the merits.

*Southwest Weather Research, Inc. v. Jones,* 160 Tex. 104, 110–11, 327 S.W.2d 417, 421–22 (1959). Thus, at a temporary injunction hearing, the trial court determines *only* whether the applicant has shown: (1) a probable right of success at final trial; and (2) imminent, irreparable injury in the interim if the injunction is not issued. *See Walling v. Metcalfe,* 863 S.W.2d 56, 57 (Tex.1993). The ultimate merits of the controversy, both legal and factual issues, are not before the trial court. *See Midland Bldg. & Loan Ass'n v. Sparks Chapel Colored M.E. Church,* 35 S.W.2d 774, 775 (Tex.Civ.App.-Dallas 1931, no writ)(issuance of temporary injunction does "not determine the issues of law or fact involved in the main suit, and they are left as they existed prior to the issuance of such writ").

Thus, regardless of whether the "findings" set forth in the trial court's order are findings of fact or conclusions of law under TEX.R. CIV. P. 296, and despite the breadth of the trial court's language, the ultimate issue of whether the "non-compete agree-

ments in question were made without consideration given by Plaintiff and are not ancillary to an otherwise enforceable agreement" was not before the trial court at the temporary injunction hearing, and is not before this court on appeal.

Moreover, the trial court's refusal to grant a temporary injunction was based on the record presented at the temporary injunction hearing. We will not assume that the evidence taken at a preliminary hearing will be the same as the evidence developed at a full trial on the merits. *See Davis*, 571 S.W.2d at 862. Thus, our review of the trial court's order is limited to whether the trial judge abused its discretion in refusing to grant temporary relief. *Id.* at 862–63; *Hiss v. Great N. Am. Co.*, 871 S.W.2d 218, 219 (Tex.App.-Dallas 1993, no writ).

Tom James argues the enforceability of a covenant not to compete is a question of law for the court, citing *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 644 (Tex. 1994). We agree. However, *Light* was not a temporary injunction case. *See Centel Cellular Co. v. Light*, 841 S.W.2d 95, 97 (Tex.App.-Tyler 1992), *rev'd*, 883 S.W.2d 642 (Tex.1994). Despite our de novo review of legal issues related to the trial court's decision on the application for temporary injunction, the trial court did not, and we do not, reach the ultimate issue of the enforceability of the non-compete agreements. That issue awaits a final judgment on the merits, such as a final judgment entered after a jury or bench trial or a hearing on a motion for summary judgment. *See Hiss*, 871 S.W.2d at 220 (resolution of issues on their merits must await appeal from a final judgment in underlying suit). Thus, in deciding this appeal, we expressly decline to reach the ultimate issue of whether the covenants not to compete are enforceable under Texas law.

PROBABLE RIGHT OF RECOVERY

## A. Covenants Not to Compete

### 1. Introduction

 A covenant not to compete is a contract in restraint of trade and is unenforceable unless it meets certain statutory requirements. *See* Tex. Bus. & Com.Code Ann. §§ 15.05, 15.50 (Vernon 2002). Section 15.50(a) sets out the exclusive criteria for enforceability of a covenant not to compete:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com.Code Ann. § 15.50(a). Thus, an enforceable non-compete agreement requires inquiries as to whether: "(1) is there an otherwise enforceable agreement, to which (2) the covenant not to compete is ancillary to or a part of at the time the agreement is made." *Light*, 883 S.W.2d at 644.

 Such "otherwise enforceable agreement" must, like any contract, be supported by consideration. Standing alone, an at-will employment relationship does not constitute an otherwise enforceable agreement because it is not binding on either the employee or the employer. *Martin v. Credit Protection Ass'n, Inc.*, 793 S.W.2d 667, 669 (Tex.1990). Nevertheless, an at-will employment relationship may give rise to an otherwise enforceable agreement as long as independent consideration is given in exchange for a promise

and such consideration is not illusory. *Light,* 883 S.W.2d at 645–46.

 If an otherwise enforceable agreement exists, the covenant not to compete must be "ancillary to or a part of" that agreement "at the time the agreement is made." *Id.* To meet this requirement:

(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and

(2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.

*Id.* at 647. Under section 15.50, the point in time relevant to this determination "is *the moment the agreement is made;* the issue is whether, 'at the time the agreement is made,' there exists other mutually binding promises to which the covenant not to compete is ancillary or part and parcel." *CRC–Evans Pipeline Int'l, Inc. v. Myers,* 927 S.W.2d 259, 263 (Tex.App.-Houston [1st Dist.] 1996, no writ) (emphasis original). *See Light,* 883 S.W.2d at 645 n. 6. If the underlying promise is illusory *at the time* the covenant is agreed to, the covenant is unenforceable even if the underlying promise later becomes enforceable as a unilateral contract. *Light,* 883 S.W.2d at 645 n. 6. ("But such [binding] unilateral contract, since it could be accepted only by future performance, could not support a covenant not to compete inasmuch as it was not an 'otherwise enforceable agreement at the time the agreement is made' as required by § 15.50."); *Anderson Chem. Co. v. Green,* 66 S.W.3d 434, 438 (Tex.App.-Amarillo 2001, no pet.) (unilateral promise not to disclose proprietary information cannot support covenant not to compete because it was not otherwise enforceable at the time it was made).

2. Otherwise Enforceable Agreements

In its first issue, Tom James argues the trial court erroneously applied the criteria for enforceability of the covenants not to compete. In the context of Tom James's application for a temporary injunction based on a non-compete clause, the trial court was presented with whether Tom James had shown there was a likelihood that it could prove: (1) the existence of an otherwise enforceable agreement; to which (2) the covenant not to compete was ancillary to or a part of at the time the agreement was made. *See* Tex. Bus. & Com.Code Ann. § 15.50(a). *Light,* 883 S.W.2d at 644. By denying the application, the trial court effectively found that Tom James had not proved a likelihood that it would succeed on the merits of its claim based on the covenants not to compete.

However, Tom James argues the trial court abused its discretion because the evidence conclusively established that the non-competition covenants were ancillary to any of three otherwise enforceable agreements existing between the parties, to wit: its agreements with each appellee: to (1) provide sales aids; (2) disclose confidential information and trade secrets; and (3) provide specialized training. We examine in turn the evidence concerning the enforceability of each of these agreements.

a. Agreement to Provide Sales Aids

There is evidence Tom James agreed to furnish sales aids to appellees to assist them in performing their duties, and agreed to furnish additional sales aids *during the employment* of appellees. Further, there is evidence Appellees agreed to return the sales aids on termination or pay the cost of the sales aids, and that the terms of the non-compete agreements restrained appellees from competing with Tom James for two years. Accordingly, by its terms, the non-compete covenant

sought to bind appellees even if they returned the sales aids on termination.

■ Based on this evidence, the trial court could have concluded the agreement was illusory and unenforceable at the time it was made because Tom James could have avoided its obligations to perform by terminating the employees. *See Light,* 883 S.W.2d at 644–45. Further, the trial court could have concluded the covenants not to compete were not ancillary to the agreement to furnish sales aids because they were not designed to enforce the employees' return promises given in exchange for the sales aids (i.e. the promise to return or pay for the sales aids). *See id.* at 647. Such conclusions would not be an abuse of discretion.

b. Agreement to Provide Confidential Information

■ According to the record, paragraph five of the employment agreements states that as a result of his employment, the employee "has received" confidential information and trade secrets, thus indicating the information was disclosed without restriction before the agreement was made, and was not given in exchange for the promise not to disclose the information. Thus, the trial court could have concluded that, *"[a]t the moment* the non-disclosure agreements were made, they would have been unenforceable because past consideration, such as the sharing of trade secrets in the past, will not support a subsequent promise." *CRC–Evans,* 927 S.W.2d at 265 (emphasis original). The employment agreements also provide the employees "will become familiar with and acquire knowledge of" confidential information as a result of his employment. The agreements did not obligate Tom James to disclose any confidential information outside of the employment relationships. Thus, the trial court also could have reasonably concluded the agreements were dependent on continued employment, and thus are illusory. *See Light,* 883 S.W.2d at 644–45; *Strickland v. Medtronic, Inc.,* 97 S.W.3d 835, 839 (Tex.App.-Dallas 2003, pet. filed) (employer's implied promise to provide confidential information to employee was illusory); *Anderson Chem. Co.,* 66 S.W.3d at 438. Such a conclusion would not be an abuse of discretion.

c. Agreement to Provide Specialized Training

■ According to the record, paragraph eight of each employment agreement contains an acknowledgment that the employee *"has received* from Tom James extensive and specialized sales school training.... This school *included ...."* (Emphasis added). The agreements went on to recite that each employee agreed to not compete against Tom James "in consideration for said training and in consideration for his or her employment with [Tom James]." Based on this evidence, the trial court could have concluded that, *at the moment the non-disclosure agreements were made,* the agreement to provide sales training was unenforceable because it was based on past consideration. *See CRC–Evans,* 927 S.W.2d at 265. *See also Strickland,* 97 S.W.3d at 839 (relevant inquiry is whether, *"at the time the agreement is made,* there exists a binding promise to train." (emphasis original)).

After submission, Tom James referred us to a recent case out of the Fourteenth Court of Appeals in support of the argument that a promise to provide specialized training is not illusory. *See Air America Jet Charter, Inc. v. Lawhon,* 93 S.W.3d 441 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). This decision is not relevant to the disposition of this case. *Air America* did not involve a covenant not to compete or a request for temporary injunction. *Air America* was an appeal from a sum-

mary judgment that found the employee's promise to work for a year after receiving specialized pilot training was unenforceable. *Id.* at 443. The court of appeals held that a promise to provide training can be consideration for a promise to work for a specific time period. *Id.* This holding has no bearing on the outcome of the case before us. The issue in a non-compete case is not simply whether the underlying agreement can be enforced as a unilateral contract, but whether the covenant not to compete is enforceable. *See* Tex. Bus. & Com. Code Ann. § 15.50(a).

Based on a review of the entire temporary injunction record, and drawing all legitimate inferences from the evidence in the light most favorable to the trial court's order, we conclude the trial court did not abuse its discretion in denying the temporary injunction. The trial court's action was not arbitrary and it did not misapply the law to established facts. The trial court had to resolve conflicting evidence in deciding to deny the temporary injunction. It did not abuse its discretion in concluding that Tom James had not shown a probability of success on the enforceability of the covenants not to compete. We resolve the first issue against Tom James.

### B. Trade Secrets

Tom James also sought a temporary injunction to prevent appellees from disclosing or using confidential information and trade secrets acquired during their employment. In its second issue, Tom James argues the trial court erroneously applied the law of trade secrets in denying a temporary injunction to protect its confidential information and trade secrets.

■■■■■ A non-disclosure agreement may be enforceable even if a covenant not to compete is not. *See Anderson Chem. Co.,* 66 S.W.3d at 439. An employee also has a common law duty not to use confi-

dential or proprietary information acquired during employment adversely to his employer. *See id.,* at 442. To warrant protection, the information must have a substantial element of secrecy and give the employer a competitive advantage. *Rugen,* 864 S.W.2d at 552. Secrecy implies the information is not generally known or readily ascertainable. *Id.* Information otherwise qualifying as a trade secret may lose its "secret" status when disclosed to others with the employer's blessing. *CRC–Evans,* 927 S.W.2d at 266.

■■■■ Tom James presented evidence that most of the printed forms used in selling its products contain a printed legend to the effect that the information is confidential trade secret property of Tom James and may only be used in furtherance of the sale of Tom James merchandise. Appellees countered with evidence that Tom James's customer lists, sales techniques, training meetings and other information were not kept secret. Appellees offered evidence that salesmen were encouraged to take potential sales recruits on sales calls to observe customers, sales techniques, sales materials and pricing information. These recruits were not required to sign a confidentiality agreement and were not told the information they observed was confidential. Appellees also offered evidence that the national sales meetings were open to sales recruits and even competitors. One former sales manager for Tom James testified that as a matter of practice, Tom James did not treat its customer lists, customer requirements, price lists, selling techniques and methods as confidential. Thus, evidence supports the conclusion that despite the pre-printed legend on its forms, Tom James did not keep the information secret and even encouraged disclosure to others. *See CRC–Evans,* 927 S.W.2d at 266.

Tom James argues it only had to keep the information secret from competitors and it did not compromise the secrecy of the information by encouraging salespersons to exchange customer lists with salesmen in other industries. However, based on the evidence that Tom James allowed the allegedly secret information to be disclosed to third parties, the trial court could have concluded Tom James lost all control over the information and had no way to prevent the third parties from disclosing the information to others, including its competitors. Thus, the trial court did not abuse its discretion in concluding Tom James did not show a probability of success on the trade secrets issue. The court based its decision on conflicting evidence and the record contains evidence reasonably supporting that decision. *Recon Exploration, Inc. v. Hodges,* 798 S.W.2d 848, 852 (Tex.App.-Dallas 1990, no writ). We resolve Tom James's second issue against it.

### IRREPARABLE INJURY

In its third issue, Tom James claims the trial court erred in finding Tom James had not shown it would be irreparably injured if the temporary injunction was denied. Tom James argues (i) the parties agreed to an injunction in the employment agreements; (ii) it was not required to show irreparable injury under sections 15.50 and 15.51(a); and (iii) it did show imminent or irreparable harm from appellees' unfair competition. We need not address this issue because the trial court did not abuse its discretion in denying the temporary injunction based on its holding that Tom James failed to show a probable right of success on the merits as to either its covenants not to compete or its trade secret claims.

### CONCLUSION

The trial court heard conflicting evidence regarding the consideration for the covenants not to compete and whether they were ancillary to an otherwise enforceable agreement at the time they were made. It also heard conflicting evidence about whether Tom James could show the information was confidential or trade secret. The trial court did not abuse its discretion in deciding that Tom James failed to show, at the temporary injunction hearing, that it would likely succeed on the merits of the covenant not to compete and trade secret claims.

Lastly, although the case is not moot, the record before us does not reveal why the trial court abated this case. Neither Tom James's motion for new trial nor its motion to reconsider the summary judgment requested an abatement of the case pending the decision of this appeal. In their withdrawal of their motion to dismiss this appeal, appellees noted that the trial court felt, as Tom James had argued, the proceedings in the trial court were interfering with our disposition of the interlocutory appeal. The parties then agreed to abate the case in the trial court.

▇▇ The parties may be attempting to obtain an advance ruling on the merits from this Court. A similar attempt was made and rejected in *Hiss.* 871 S.W.2d 218. We held that "[t]rial courts should proceed expeditiously from the grant or denial of temporary injunctive relief to full consideration of the merits to reduce the need for interlocutory appeals." *Id.* at 219 (citing *Coalition of Cities for Affordable Util. Rates v. Third Court of Appeals,* 787 S.W.2d 946, 947 (Tex.1990) (orig.proceeding) (per curiam)). The legislature and our rules of civil and appellate procedure disfavor abatements such as employed here. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(b) (other than an appeal of the grant or denial of temporary injunctions, interlocutory appeal stays commencement of trial); TEX.R.APP. P. 29.5 (while appeal of interlocutory order is pending, trial

court retains jurisdiction and may, if permitted by law, proceed with trial on merits); Tex.R. Civ. P. 683 ("The appeal of a temporary injunction shall constitute no cause for delay of the trial.").

 As we have said repeatedly, "the fastest way of obviating the hardship of an unfavorable preliminary order is to try the case on the merits." *Hilb, Rogal & Hamilton Co. v. Wurzman,* 861 S.W.2d 30, 35 (Tex.App.-Dallas 1993, no writ); *see also Southwest Weather Research,* 160 Tex. at 111, 327 S.W.2d at 422. "For the parties to seek and the trial court to grant an abatement, stay, or continuance in the trial court while the court of appeals considers an interlocutory appeal increases delay and expense." *Hiss,* 871 S.W.2d at 219. Parties may not use the trial court's ruling on a temporary injunction to get an advance ruling on the merits and we do not condone such an effort. *Id.* Our decision is expressly limited as addressing not the ultimate merits of the case, but only the determination of whether the trial court abused its discretion in denying the temporary injunction.

We affirm the trial court's order.