

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00240-CV

**JEFFREY SCOTT LOCKHART,**

                                                            **Appellant**

 **v.**

**DALE PATRICK MCCURLEY D/B/A**
**MIDLOTHIAN INSURANCE AGENCY,**

                                                            **Appellee**

From the County Court at Law
Ellis County, Texas
Trial Court No. 09-C-3400

## MEMORANDUM  OPINION

Dale Patrick McCurley d/b/a Midlothian Insurance Agency terminated Jeffrey

Scott Lockhart's employment and later sued him for breach of contract, breach of the

duty of loyalty and fiduciary duty, and unfair competition.  The trial court granted a

temporary injunction against Lockhart.  In this accelerated appeal, Lockhart argues that

the injunction order: (1) lacks a geographic limitation; (2) is based on a non-compete

clause[1] unsupported by new consideration; (3) is an unreasonable restraint on trade; and (4) is confusing.  We affirm.

## JURISDICTION

Midlothian contends that Lockhart's appeal should be dismissed for two reasons.

First, Midlothian contends that Lockhart's motion for extension of time to file appeal was untimely, failed to comply with Rule of Appellate Procedure 10.5(b), and failed to provide a good-faith explanation for the untimely filing.  We previously found, with Chief Justice Gray dissenting, that Lockhart's motion provided a reasonable explanation for the untimely filed notice of appeal and granted an implied motion for extension of time to file the notice of appeal.  *See Lockhart v. McCurley*, No. 10-09-00240-CV (Tex. App.—Waco Oct. 12, 2009, order) (citing *Houser v. McElveen*, 243 S.W.3d 646, 646-67 (Tex. 2008) (per curiam), *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997), *In re B.G.*, 104 S.W.3d 565, 567 (Tex. App.—Waco 2002, order)); *see also Lockhart v. McCurley*, 298 S.W.3d 449 (Tex. App.—Waco 2009) (Gray, C.J., dissenting).

Second, Midlothian contends that in Lockhart's motion for extension, he "judicially admitted" that his appeal is moot.  Specifically, Lockhart explained that he was "assessing his rights under the [injunction] order, and seeking clarification of the

---

[1]    The clause states:

Employee agrees that he/she will not within a period of two (2) years following the date of his/her termination of employment with the Agency, or his/her retirement therefrom, directly or indirectly, by or for himself/herself or as the agent of another, or through all others as his/her agent: (a) divulge the names of the Agency's policy holders or accounts to any other person, firm or Agency; (b) in any way seek to induce, bring about, promote, facilitate, or encourage the discontinuance of or in any way solicit for or on behalf of himself or others, or in any way quote rates, accept, receive, write, bind, broker, or transfer any insurance business, policies, risk or accounts, written, issued, covered, obtained (whether through the efforts of the Employee or not) or carried by the Agency.

Court's rulings," when a visiting judge signed a discovery order. Although the discovery order was subsequently withdrawn, Lockhart explained that the discovery order prompted him to appeal. Lockhart further explained that he "sought additional clarification from the Court and determined that such an appeal to this Court is required." Reading his motion in its entirety, it appears that Lockhart intended to appeal the injunction order. His appeal of the injunction order is not moot. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642-43 (Tex. 2005).

## INJUNCTION ORDER

An injunction order shall: (1) set forth the reasons for its issuance; (2) be specific in terms; and (3) describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained. *See* TEX. R. CIV. P. 683. Because an appeal from a temporary injunction is interlocutory, we may not consider the merits of the underlying lawsuit.[2] *See Davis v. Huey,* 571 S.W.2d 859, 861 (Tex. 1978).

The injunction order in this case enjoins Lockhart from "soliciting any insurance product-related business from, or initiating any insurance product-related contact or communication with, those specific Midlothian [] clients:"

[W]hom Lockhart served;

---

[2] To some extent, Lockhart's first three issues challenge the enforceability of the non-compete clause. When a trial court grants a temporary injunction on the basis of a non-compete clause, however, the issue on appeal is not whether the agreement is enforceable. *See Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 619 (Tex. App.—Dallas 2004, no pet.); *see also FH1 Fin. Servs. v. Debt Settlement Am., Inc.*, No. 10-06-00167-CV, 2007 Tex. App. LEXIS 6502, at *4-5 (Tex. App.—Waco Aug. 15, 2007, no pet.) (mem. op.); *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884-85 (Tex. App.—Dallas 2003, no pet.); *W.R. Grace & Co.-Conn v. Henson*, No. 13-06-00668-CV, 2007 Tex. App. LEXIS 6771, at *11-12 (Tex. App.—Corpus Christi Aug. 23, 2007, no pet.) (mem. op.); *Smith v. Livingston Hearing Aid Ctr., Inc.*, No. 07-06-0204-CV, 2006 Tex. App. LEXIS 8231, at *3-6 (Tex. App.—Amarillo Sept. 18, 2006, no pet.) (mem. op.).

[W]ith whom Lockhart dealt;

[W]ith whom Lockhart represented or conducted Midlothian-related business; and/or

[W]hose confidential information became known to Lockhart, or to which Lockhart possessed unfettered access, in relation to Lockhart's activities as Midlothian sales employee;

[A]s of the August 30, 2007 execution date of the [employment contract] into which Midlothian and Lockhart mutually-entered (excluding Lockhart's family and relatives, as well as, any Midlothian client who has executed, or who in the future may execute, account and/or policy transfer documentation, without the encouragement or aid of Lockhart, his agents, representatives, assigns, et al.)

The trial court further prohibited Lockhart from:

[A]ccepting business from any Midlothian client whom Lockhart solicited outside the August 30, 2007, contractual authorizations or consent of Midlothian.

[U]sing, disclosing, or transmitting for any purpose, including solicitation of Midlothian's clients or accounts, the information contained in the records of Midlothian, including but not limited to, confidential information concerning Midlothian's clients, including but not limited to, the names, addresses, and policy information (policy limits, policy premiums, policy expiration dates, etc.) of said clients, known to Lockhart, or to which Lockhart possessed access, in relation to Lockhart's activities as a Midlothian sales employee, as of the execution date of the above-referenced Contract of Employment.

The order does not enjoin Lockhart from "soliciting any insurance product-related business from, or initiating any insurance product-related contact or communication, with those clients whom Lockhart sold insurance-related products prior to Lockhart's and Midlothian's entrance into their initial 2003 business relationship and who meet each of the following criteria:"

[C]lients with whom Lockhart's sales relationship was initiated and continuously existed – *without interruption* – from the above-referenced 2003 date, through the termination date of the Contract for Employment; AND

[C]lients with whom Lockhart served, dealt, and/or represented on a continuous and uninterrupted basis during said period; AND

[C]lients whose confidential information became known to Lockhart, or to which Lockhart possessed access, in relation to Lockhart's activities as insurance representative, prior to said time period.

Nor does the order enjoin Lockhart from "soliciting any insurance product-related business from, or initiating any insurance product-related contact or communication with, those Potential Clients of Midlothian, with whom Midlothian possessed no live contractual relationship."

**Lack of Geographic Limitation**

In issue one, Lockhart contends that the injunction order is overbroad for lack of a geographic limitation.

The temporary injunction order is not an "industry-wide and worldwide restriction," as Lockhart alleges. Rather, it is limited to specific "Midlothian Insurance Agency clients." This limitation is a sufficient alternative for a geographic limitation. *See Gallagher Healthcare Ins. Servs. v. Vogelsang*, No. 01-07-00478-CV, 2009 Tex. App. LEXIS 6838, at *33-37 (Tex. App.—Houston [1st Dist.] Aug. 21, 2009, no pet.); *see also Totino v. Alexander & Assocs.*, No. 01-97-01204-CV, 1998 Tex. App. LEXIS 5295, at *9-16 (Tex. App.—Houston [1st Dist.] Aug. 20, 1998, no pet.). We overrule issue one.

## Lack of New Consideration

In issue two, Lockhart argues that the injunction order is "based on an illusory and unenforceable contract" because the agreement is unsupported by new consideration. The enforceability of the non-compete clause, however, is not before us. *See Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 619 (Tex. App.—Dallas 2004, no pet.); *see also FH1 Fin. Servs. v. Debt Settlement Am., Inc.*, No. 10-06-00167-CV, 2007 Tex. App. LEXIS 6502, at *4-5 (Tex. App.—Waco Aug. 15, 2007, no pet.) (mem. op.). We overrule issue two.

## Unreasonable Restraint on Trade

In issue three, Lockhart alleges that the order purports to prohibit him from using the "professional contacts and relationships" that he has developed during his years of working in the insurance industry; thus, it is an "unreasonable restraint on trade and his ability to earn a living."

Courts have upheld similar provisions prohibiting a former employee from soliciting the employer's customers or disclosing the employer's confidential information. *See Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 550 (Tex. App.—Dallas 1993, no pet.); *see also Totino*, 1998 Tex. App. LEXIS 5295, at *2-3. These types of prohibitions do not "enjoin competition" because they do not prohibit the employee from "organizing a competing firm" or "developing her own clients and consultants." *Rugen*, 864 S.W.2d at 551. In *Totino*, the First Court explained that "nonrecruitment covenants do not significantly restrain the individual appellants' trade or commerce; the covenants merely prevent them from recruiting A&A's employees for two years

while appellants carry on their trade with Corroon." *Totino*, 1998 Tex. App. LEXIS 5295, at *30. The covenants did not "restrict current A&A employees from leaving A&A or working with the individual appellants;" "[t]he individual appellants simply may not recruit or solicit the A&A employees." *Id*. at *32-33.

The injunction order in this case prohibits Lockhart from soliciting and accepting business from Midlothian clients and from disclosing Midlothian's confidential information. He is not prohibited from "organizing a competing firm" or "developing [his] own clients and consultants." *Rugen*, 864 S.W.2d at 551. In fact, the order expressly excludes Midlothian clients who transfer without Lockhart's solicitation and clients Lockhart obtained before becoming employed with Midlothian. We cannot say that the order is an unreasonable restraint on trade. We overrule issue three.

**Vague and Confusing**

In issue four, Lockhart complains that the injunction order is "vague," "amorphous," "confusing," "overbroad," "contradictory," and "difficult to reconcile."

Lockhart first contends that the order is inconsistent because the trial court found that Midlothian established a "probable right of recovery," would "suffer irreparable injury," and had no adequate remedy at law, but that the order is not a final finding of a legal violation of the contract, insurance solicitation activities after 2003, or any ongoing or future violations. "The issue before the trial court in a temporary injunction hearing is whether the applicant may preserve the status quo of the litigation's subject matter *pending* trial on the merits." *Health Discovery Corp. v. Williams*, 148 S.W.3d 167, 169 (Tex. App.—Waco 2004, no pet.) (emphasis added); *see Butnaru v. Ford Motor Co.*, 84 S.W.3d

198, 204 (Tex. 2002). It is not inconsistent for the trial court to find that Midlothian established the right to a temporary injunction, yet clarify that the order is not a ruling on the merits, *i.e.*, a finding of any legal violations.

Lockhart next argues that the order "fails to provide any meaningful way to define or understand what activity [he] can engage in."

Lockhart complains that the order fails to define "Midlothian clients" and clients whom he served, dealt with, "represented or conducted Midlothian-related business" with, "sold insurance-related products prior to [2003]," and whose "relationship was initiated and continuously existed – *without interruption* – from [ 2003] through the termination date of the [employment contract]." "Where secret customer information was one of the main assets sought to be protected, the trial court would defeat that purpose by requiring the public disclosure of such information." *Safeguard Bus. Sys., Inc. v. Schaffer*, 822 S.W.2d 640, 644 (Tex. App.—Dallas 1991, no writ); *see Rollins v. Universal Coin & Bullion, Ltd.*, No. 09-06-00150 CV, 2006 Tex. App. LEXIS 8764, at *16-17 (Tex. App.—Beaumont Oct. 12, 2006, no pet.) (mem. op.). The order need not identify the clients by name; it is reasonable to presume that Lockhart is "sufficiently familiar with the employer's business and its customers to avoid violating the injunction." *Schaffer*, 822 S.W.2d at 644; *see Rollins* 2006 Tex. App. LEXIS 8764, at *16-17.

Lockhart also complains that (1) the injunction order fails to define "insurance product-related business," "insurance product-related contact or communication," "confidential information," "unfettered access," or "initiating a sales relationship;" (2) the phrases "insurance product-related business" and "insurance product-related

contact or communication" are overbroad; and (3) the injunction fails to explain how he "served" clients, how "served" differs from "dealt," whether "Midlothian-related business" differs from "insurance product-related business," how "unfettered access" differs from regular access, to which provisions the August 2007 date applies, the time period that applies to initiating a sales relationship, the "said period" applicable to clients whom he "served, dealt, and/or represented," whether the clients he can serve must meet all three criteria identified in the order, and how to apply the standard for when "confidential information became known to [him]."

This level of detail, however, is not required. To satisfy the requirement that an injunction order be "specific in terms," the order "must be as precise as possible to inform the defendant of the acts he is restrained from doing." *FH1 Fin. Servs.*, 2007 Tex. App. LEXIS 6502, at *8; *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.,* 156 Tex. 7, 291 S.W.2d 697, 702 (1956). The defendant should not be required to draw inferences about which persons may differ to determine what conduct is restrained. *FH1 Fin. Servs.*, 2007 Tex. App. LEXIS 6502, at *8; *see San Antonio Bar Ass'n*, 291 S.W.2d at 702. Nonetheless, an injunction must be broad enough to prevent repetition of the conduct sought to be enjoined. *FH1 Fin. Servs.*, 2007 Tex. App. LEXIS 6502, at *8; *see San Antonio Bar Ass'n*, 291 S.W.2d at 702.

The order in this case specifically and expressly explains the acts that Lockhart is enjoined from engaging in, and even goes beyond this standard by explaining the conduct Lockhart may engage in. *See FH1 Fin. Servs.*, 2007 Tex. App. LEXIS 6502, at *8; *see also San Antonio Bar Ass'n*, 291 S.W.2d at 702. The order leaves nothing to conjecture.

*See FH1 Fin. Servs.*, 2007 Tex. App. LEXIS 6502, at \*8; *see also San Antonio Bar Ass'n*, 291 S.W.2d at 702; *Rugen*, 864 S.W.2d at 553 ("The language in the [injunction] order describes in reasonable detail the acts sought to be restrained.").

Finally, Lockhart complains that the order forbids him from using any Midlothian records or account information, when he has already returned such documents to Midlothian and has neither a need nor a desire to use such information. Yet, the evidence at the hearing established that such information would be advantageous to competitors. It was proper for the trial court to enjoin Lockhart from using such information because he is still in a position to use it. *See Rugen*, 864 S.W.2d at 552; *see also T-N-T Motorsports v. Hennessey Motorsports*, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, no pet). We overrule issue four.

We affirm the trial court's injunction order.


FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
    (Chief Justice Gray dissenting with note)\*
Affirmed
Opinion delivered and filed March 10, 2010
[CV06]

\* (Chief Justice Gray dissents. A separate opinion will not issue. Chief Justice Gray notes, however, that he would dismiss the proceeding for lack of jurisdiction because the notice of appeal was not timely filed and no good cause for the late filing was provided. He therefore joins no part of the opinion and must dissent to the judgment which affirms the trial court's order although that would be the practical effect of a dismissal.)