**AFFIRM in Part, REVERSE in Part, and REMAND, Opinion Filed April 12, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00265-CV

**RWI CONSTRUCTION, INC., RWI ACQUISITION, LLC, LONE STAR OPPORTUNITIES FUND V. LP, and RWI CONSTRUCTION HOLDINGS, LLC,**
**Appellants**
**V.**
**COMERICA BANK, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-01217**

## OPINION

Before Justices Brown, Schenck, and Pedersen, III
Opinion by Justice Schenck

In this interlocutory appeal, we must determine whether the trial court erred in granting appellee Comerica Bank's request for a temporary injunction. In a single issue, appellants Lone Star Opportunities Fund V. LP ("Lone Star"), RWI Construction, Inc. ("RWI Construction"), RWI Acquisition, LLC ("RWI Acquisition"), and RWI Construction Holdings, LLC ("RWI Holdings") claim the trial court abused its discretion in entering the injunction because Comerica Bank did not establish that it would suffer an irreparable injury for which the remedy at law would be inadequate. We reverse in part and affirm in part the trial court's temporary injunction order. We remand the case to the trial court for entry of a temporary injunction in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Lone Star is a private equity fund that acquires, holds, and sells other companies like RWI Acquisition. RWI Acquisition in turn owns RWI Construction. The assets of Lone Star are limited primarily to its investment in the companies in its portfolio and to the subordinated debt the portfolio companies owe to Lone Star. Comerica Bank is a limited partner in Lone Star[1] and has, over the years, extended loans to some of Lone Star's portfolio companies. Lone Star itself has a revolving credit loan with Texas Capital Bank. Comerica Bank is a participant in that loan.

At issue in this case are a loan Comerica Bank made to RWI Construction and RWI Acquisition in excess of $8 million and the respective guaranties of RWI Holdings[2] and Lone Star.[3] RWI Construction's and RWI Acquisition's accounts receivable, inventory, equipment, fixtures, and other personal property serve as collateral for the loan. It is undisputed that RWI Construction and RWI Acquisition failed to pay their indebtedness to Comerica Bank at maturity and, in May 2017, Comerica Bank demanded payment from appellants on the notes and the guaranties. No payment was made.

On January 30, 2018, Comerica Bank filed suit against appellants for breach of their agreements and sought injunctive relief enjoining appellants from dissipating certain funds deposited into an account at Texas Capital Bank in response to a capital call issued by Lone Star. Comerica Bank anticipated that Texas Capital Bank would distribute the proceeds of the capital call in excess of the amounts required to fully satisfy its revolving loan ("Excess Proceeds") to Lone Star and asserted that, unless enjoined, Lone Star would dissipate, hide, secrete, or otherwise

---

[1] In this case, Comerica Bank does not assert any claims in its capacity as a partner in Lone Star. All of its claims relate to its role as a lender.

[2] Appellants concede that the RWI entities are insolvent and are unable to meet their obligations as they come due.

[3] Lone Star's guaranty is a limited guaranty. Comerica Bank's representative calculated the amount due on the guaranty to be $4,400,000.04 in principal, plus continuing costs.

make the Excess Proceeds unavailable to Comerica Bank. The trial court entered a temporary restraining order enjoining appellants from hiding, secreting, or dissipating the Excess Proceeds.

On February 13, 2018, the trial court conducted a hearing to determine whether to grant Comerica Bank a temporary injunction. During that hearing, the trial court took judicial notice of the testimony and exhibits from an earlier hearing on appellants' motion to reconsider the temporary restraining order and the parties called various witnesses to testify.

The record from the temporary injunction hearing includes the testimony of a representative of a valuation firm Comerica Bank hired to value RWI Construction's fleet of trucks, a Vice President in Comerica Bank's special asset group, and the managing partner of Lone Star. The record also includes numerous documents admitted into evidence during the hearing on appellants' motion to dissolve the temporary restraining order and the hearing on the application for temporary injunction.

The evidence presented by Comerica Bank indicated the following:

- The RWI entities have ceased operating and are insolvent.

- The outstanding balance on the loan at issue is approximately $9.4 million.

- RWI Construction's equipment, which is collateral securing the loan, has a forced liquidation value of approximately $2 million.

- The deficiency following the sale of RWI Construction's equipment is estimated to be at least $6 million and potentially more than $7 million.

- In October 2017, RWI Construction received a payment of $800,000 in settlement of an account receivable owed by Oxy USA WTP LP ("Oxy"). That receivable and its proceeds are collateral for Comerica Bank's loan. Comerica Bank demanded that RWI Construction turn over that payment. RWI Construction did not turn over that payment to Comerica Bank but instead transferred it to Lone Star. Lone Star, like RWI Construction, has refused to turn over those funds to Comerica Bank.

- Lone Star purchased a receivable from RWI Construction in the amount of $1,445,094.32. That receivable secures RWI Construction and RWI Acquisition's debt to Comerica Bank. If collected, those funds would belong to Comerica Bank, and are not an asset available to Lone Star to pay on its guaranty, unless and until the unpaid balance of the loan is reduced to $4,400,000.04 or less.

- As of September 30, 2017, Lone Star had a cash balance of $311.77 and notes receivable and interest receivable of $188 million, $186 million of which is from portfolio companies that are not operating or are operating with significant third-party debt.

- In September 2017, Lone Star issued a capital call in the amount of $32 million. Comerica Bank paid its *pro rata* share, but Lone Star Opportunities Fund V, LP ("Lone Star OF"), the general partner of Lone Star, failed to pay its share.

- Texas Capital Bank received $28.8 million of the capital call to pay the balance owed on Lone Star's revolving loan, and Lone Star used the remaining proceeds to fund the operations of its portfolio companies that cannot return the funds to Lone Star.

- In early 2018, Lone Star made its final capital call in the amount of $40 million to be paid directly to an account at Texas Capital Bank and to be applied by Texas Capital Bank to Lone Star's indebtedness under the revolving loan totaling approximately $36 million. Again, Comerica Bank paid its *pro rata* share of the capital call, and Lone Star OF failed to contribute its share.

- If the Excess Proceeds from the final capital call are paid to Lone Star, Comerica Bank believes that it will dissipate those funds just as it had done with the initial capital call, and Lone Star does not have the ability to make further capital calls to generate funds to secure its outstanding debts.

Lone Star's representative testified that Lone Star could pay the guaranty with the cash it has from the Excess Proceeds and from dividends or cash distributions from five of its portfolio companies. Lone Star's representative further testified that Lone Star's updated financials show the fund is valued at $173,402,000[4] and that the portfolio companies were improving in cash flow and operations.

At the conclusion of the hearing, the trial court announced that it was granting the application for temporary injunction. Counsel for appellants asked if the court was finding that Lone Star is insolvent. The trial court indicated it was not making such a finding.

On February 15, 2018, the trial court entered its order enjoining appellants and Texas Capital Bank from taking any action with respect to the Excess Proceeds other than depositing

---

[4] In actuality, the financial statement Lone Star's representative referenced was for the period ending December 31, 2016, and, thus, was not updated from the financial statement Comerica Bank's representative reviewed.

them into the registry of the court to be held in an interest bearing account pending a trial on the merits or further order of the trial court. The trial court found that, in the absence of injunctive relief, the Excess Proceeds will be made unavailable to Comerica Bank and Comerica Bank will suffer an increased loss on the loan and an irreparable injury "because [appellants], and specifically [Lone Star], lack the sufficient financial wherewithal and assets to satisfy their respective unpaid obligations under the Loan." The trial court further found that in the absence of injunctive relief, "Appellants will receive, hide, secrete or dissipate any Excess [Proceeds] paid to the [appellants] by Texas Capital or paid to [appellants] from the capital call." This interlocutory appeal followed.

## STANDARD OF REVIEW

We review a trial court's order granting or denying a request for a temporary injunction under an abuse of discretion standard. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walter v. Walter*, 127 S.W.3d 396, 398 (Tex. App.—Dallas 2004, no pet.). The reviewing court should reverse an order granting injunctive relief only if the trial court abused its discretion in granting said relief. *Butnaru*, 84 S.W.3d at 204. The reviewing court must not substitute its judgment for that of the trial court unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.* (citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985)).

In reviewing the trial court's decision, we draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment. *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex. App.—Dallas 2003, no pet.). When the trial court considers conflicting evidence, there can be no abuse of discretion. *Id.* However, the trial court abuses its discretion when it misapplies the law to established facts or when the evidence does not reasonably support the trial court's determination of the existence of probable injury or probable right of recovery. *Id.*

–5–

The purpose of a temporary injunction is to maintain the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204; *Elec. Data Sys. Corp. v. Powell*, 508 S.W.2d 137, 139 (Tex. App.—Dallas 1974, no writ). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, an applicant must plead and prove (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

On appeal, appellants do not challenge Comerica Bank's probable right of recovery. Rather, they claim only that the trial court abused its discretion by granting Comerica Bank a temporary injunction on a contractual claim seeking damages without proof of irreparable harm and an inadequate remedy at law. An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by a certain pecuniary standard. *Id.* Generally, an adequate remedy at law exists and injunctive relief is improper where any potential harm may be "adequately cured by monetary damages." *Institutional Secs. Corp. v. Hood*, 390 S.W.3d 680, 684 (Tex. App.—Dallas 2012, no pet.).

Appellants' brief directs us to authorities addressing the adequacy of monetary damage relief in contract disputes as a general matter. We have recognized a more specific application of that concept applicable to this setting by which a trial court is forbidden to issue a preliminary injunction freezing a defendant's assets simply to assure future satisfaction of a subsequent judgment, although we have not addressed the issue in quite some time. *See Frederick Leyland & Co. v. Webster Bros. & Co.*, 283 S.W. 332, 335 (Tex. App.—Dallas), *writ dism'd w.o.j.*, 283 S.W. 1071 (1926) (finding a creditor who has no prior judgment generally may not proceed in equity to restrain a debtor from selling, removing, or disposing of his property at his own pleasure, pending

a common-law action); *see also Victory Drilling, LLC v. Kaler Energy Corp.*, No. 04-07-00094-CV, 2007 WL 1828015, at *2 (Tex. App.—San Antonio June 27, 2007, no pet.) (mem. op.) (to same effect).

Other state courts have likewise adopted this general rule. *See, e.g.*, *Slamen v. Slamen*, 254 So. 3d 172, 176 (Ala. 2017) (allegation that, without the injunction, the defendant might be unable to satisfy a potential judgment remedying an alleged monetary loss does not transform an injury into an irreparable one); *Diamond v. Interstate Trading Corp.*, 606 So. 2d 631, 632 (Fla. 3d DCA 1992) (a contingent and disputed claim for money damages does not, by itself, constitute grounds for prospective injunctive relief).

The United States Supreme Court has also firmly rejected the use of an injunction to freeze assets unrelated to the suit:

> Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him . . . disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.

*De Beers Consol. Mines v. United States*, 325 U.S. 212, 222–23 (1945); *see also Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 330 (1999). The Supreme Court's decisions concerning this limitation on injunctions are rooted in the understanding of judicial remedies devised by the English courts. *Grupo Mexicano*, 527 U.S. at 318; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 5.001 (adopting English common law as rule of decision in Texas courts).[5]

---

[5] The Supreme Court adopted those principles after the Judiciary Act of 1789 conferred upon the federal courts jurisdiction over all suits in equity. *Groupo Mexicano*, 527 U.S. at 318. The "common law of England" was understood in much the same way in Texas. *Grigsby v. Reib*, 153 S.W. 1124, 1125 (Tex. 1913) ("common law of England" as adopted at the inception of the Republic was "that which had been declared by the

As Justice Scalia observed for the unanimous court in *Grupo Mexicano*, a contrary rule might prompt creditors to engage in a "race to the courthouse" in cases involving insolvent or near-insolvent debtors, with the creditor picking his venue and licensing himself, as first hog to the trough, to all of its contents. *Grupo Mexicano*, 527 U.S. at 330–31. "It would literally place the whole rights and property of the defendant under the arbitrary will of the judge, acting, if you please, *arbitrio boni judicis,* and it may be, *ex aequo et bono,* according to his own notions and conscience; but still acting with a despotic and sovereign authority." *Id.* at 331. Of course, it is not only "the arbitrary will of the judge" that may be at work in these situations. The first-filing creditor in these situations could seize control over all of the debtor's free cash and would obviously gain an advantage vis-à-vis the debtor and his less aggressive fellow creditors before the settlement negotiations commence.[6]

Moreover, a more expansive application of injunctions in cases involving contract claims for money damages would usurp the carefully constructed statutory regime established to enforce and support judicial remedies, including garnishment, attachment, receivership, and other like mechanisms. *Alliance Royalties, LLC v. Boothe*, 313 S.W.3d 493, 497 (Tex. App.—Dallas 2010, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 61.001 (attachment); *id.* § 62.001 (sequestration); *id.* § 63.001 (garnishment); *id.* § 64.001 (receivership). "If an all-purpose prejudgment injunction is available," "why [would any putative creditor] go through the trouble of complying with attachment and garnishment statutes?" *Grupo Mexicano*, 527 U.S. at 330–31. There is nothing new about debtors seeking to avoid their obligations or favoring some creditors

---

courts of the different states" by 1840 and with which the "lawyer members" of the Texas Congress "had been reared and educated"). From inception, the Texas Constitution and hence Texas courts, relying on England derived decisional authority, rejected any formalistic distinction between remedies at law and equity, making debates over the distinction immaterial. George Butte, *Early Development of Law & Equity in Texas*, 26 YALE L. REV. 699, 702-03 (1917).

[6] To be sure, the requested assets would be subject to the voidable preference mechanism in a subsequent bankruptcy. 11 U.S.C. § 547(b) (providing for the avoiding of certain transfers on or within 90 days before the date of the filing of a petition in bankruptcy). The point of this equitable limitation, however, is to restrain such a frenetic race to bankruptcy in the first instance.

over others. *Id.* at 323. A substantial body of law of "fraudulent conveyances and bankruptcy was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not." *Id.* at 322.

Thus, the ancient and controlling rule forecloses resort to injunctive relief simply to sequester a source of funds to satisfy a future judgment. That general rule would not control where there is a logical and justifiable connection between the claims alleged and the acts sought to be enjoined, or where the plaintiff claims a specific contractual or equitable interest in the assets it seeks to freeze. *See, e.g.*, *id.* at 310; *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 527 S.W.3d 579, 587 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (drilling equipment that was subject of Arawak's request for injunction was equipment it purchased and returned to Texas Black Iron ("TBI") and for which TBI failed to give credit, and could be used to mitigate Arawak's claims related to its purchase of those items).

Comerica Bank presented evidence that in October 2017, after RWI Construction and RWI Acquisition defaulted on their loan, RWI Construction collected $800,000 in settlement of a receivable owed by Oxy. Those funds were collateral for the loan at issue in this case. Rather than pay those funds over to Comerica Bank as required upon their receipt, RWI Construction transferred them to Lone Star. Accordingly, the evidence presented by Comerica Bank traced collateral for the loan to Lone Star, and those funds are both logically and justifiably connected to Comerica Bank's breach of contract claim and the relief it seeks in this case. Thus, an exception to the general rule prohibiting the freezing of assets pre-judgment exists as to the $800,000 transferred to Lone Star. *See Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 278–79 (Tex. App.—San Antonio 2003, no pet.) (affirming injunction where party seeking injunction has security interest in asset sought to be enjoined).

As to the remainder of the Excess Proceeds, all involved here appear to agree that they are the product of a general capital call on the partners of Lone Star. At this stage, Comerica Bank has not asserted any claim, in its capacity as a partner, against Lone Star or its general partner, and the Excess Proceeds do not form the basis of Comerica Bank's underlying claims on the notes and guaranties or the relief it seeks in this case. Thus, on this record, with the exception of the $800,000 discussed *supra*, the injunction freezes Lone Star's funds pretrial simply to assure their future availability to satisfy a judgment based solely on concerns about Lone Star's general future liquidity. Accordingly, the trial court misapplied the law and thus abused its discretion in enjoining appellants from taking any action with respect to the Excess Proceeds, in excess of $800,000. *See Tom James*, 109 S.W.3d at 883.

Having determined the trial court had the authority to issue a temporary injunction as to $800,000 of the funds, we next address, and reject, appellants' argument that because the trial court indicated it was not finding Lone Star to be insolvent, Comerica Bank failed to establish it has an inadequate remedy at law. While it is clear that a finding of insolvency is sufficient to establish a plaintiff does not have an adequate remedy at law, *Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 621 (Tex. App.—Dallas 2004, no pet.), appellants cite no authority to support their argument that insolvency is necessary to establish a lack of an adequate remedy at law, and, instead, request that this Court extend the law to require such a finding in breach of contract cases. We decline to do so.

To be sure, no adequate remedy at law exists "if a defendant is incapable of responding in damages." *Id.* A plaintiff does not have an adequate remedy at law if the defendant faces insolvency or becoming judgment proof before trial. *Tex. Black Iron*, 527 S.W.3d at 587.

The trial court's order granting the temporary injunction finds the defendants/appellants, and specifically Lone Star, lack the sufficient financial wherewithal and assets to satisfy their

–10–

respective unpaid obligations under the loan. Appellants concede that the RWI entities are insolvent. Thus, we need only determine whether the evidence supports the trial court's injunction as to Lone Star. The evidence established there will likely be a deficiency of at least $6 million after RWI Construction's equipment is liquidated and the proceeds are applied to the loan. Lone Star's cash resources are extremely limited, and the assets Lone Star claims to possess are of questionable value. Moreover, Comerica Bank established Lone Star has a history of converting the bank's collateral and of dissipating capital call funds in excess of the amount necessary to cover its revolving loan without reaping a return regardless of its protestations of liquidity. Lone Star has failed to pay any portion of its guaranty, and Lone Star does not have the ability to raise additional funds through capital calls from which it might pay its future or existing debts. While Lone Star's manager testified Lone Star is presently solvent and is able to pay its debts, including the guaranty, his testimony, at best, conflicts with the testimony Comerica Bank presented and an abuse of discretion does not obtain where the trial court bases its decision on conflicting evidence. *Tom James*, 109 S.W.3d at 883. Moreover, Lone Star has demonstrated its unwillingness to pay Comerica Bank. To a district court exercising discretion over an injunction decision, unwillingness to pay is just as significant, and perhaps more so, as an inability to pay.

Viewing the evidence in the light most favorable to the trial court's order and indulging every reasonable inference in favor of the ruling, as we must, we conclude Lone Star has not shown that the trial court abused its discretion in granting the temporary injunction as to $800,000. Accordingly, we overrule appellants' sole issue as to the injunction enjoining the dissipation of $800,000. We sustain appellants' issue as to the injunction enjoining dissipation of the Excess Proceeds, in excess of $800,000.

## CONCLUSION

We reverse the temporary injunction to the extent it commands appellants to desist and refrain from taking any action, or dissipating, hiding, or secreting the Excess Proceeds, in excess of $800,000, and to the extent it orders the Excess Proceeds, in excess of $800,000, to be held in the registry of the court.  In all other respects, we affirm the temporary injunction.  We remand to the trial court for entry of a temporary injunction in accordance with this opinion.[7]

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

180265F.P05

---

[7] The injunction is still in full force and effect and should remain in effect until the clerk of the trial court receives the mandate from the clerk of this Court or the Supreme Court, finally disposing of the appeal.  *See, e.g.*, *Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 411 (Tex. 2009); *City of Athens v. Gulf States Tel. Co.*, 380 S.W.2d 687, 691 (Tex. App.—Tyler 1964, writ ref'd n.r.e.).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RWI CONSTRUCTION, INC., RWI
ACQUISITION, LLC, LONE STAR
OPPORTUNITIES FUND V. LP, and RWI
CONSTRUCTION HOLDINGS, LLC,
Appellants

No. 05-18-00265-CV      V.

COMERICA BANK, Appellee

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-01217.
Opinion delivered by Justice Schenck.
Justices Brown and Pedersen, III
participating.

In accordance with this Court's opinion of this date, the order of the trial court is
**AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's
order enjoining appellants from taking any action, or dissipating, hiding, or secreting the Excess
Proceeds in excess of $800,000, and requiring that the Excess Proceeds in excess of $800,000 be
held in the registry of the court. In all other respects, the trial court's order is **AFFIRMED**. We
**REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 12th day of April, 2019.