In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00074-CV
_____

SHANE HODGSON and PHILLIP KITCHENS, Appellants

V.

U.S. MONEY RESERVE, INC. d/b/a UNITED STATES RARE COIN &
BULLION RESERVE, Appellee

On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-180,741

**MEMORANDUM OPINION**

Shane Hodgson and Phillip Kitchens ask that we dissolve a temporary injunction which, among other restrictions, prohibits them from selling or purchasing coins from persons they contacted while employed with their former employer and prohibits them from working with persons who were formerly employed by their former employer. We conclude that parts of the trial court's order are enforceable but that other parts of it are not. We affirm the order to the

1

extent it is enforceable; the portions of the order that are not enforceable are dissolved.

## Background

As of the second quarter of 2012, Hodgson and Kitchens were employees of U.S. Money Reserve, Inc. d/b/a United States Rare Coin & Bullion Reserve (USMR). USMR is in the business of buying and selling precious metals, including coins. As employees of USMR, Hodgson and Kitchens signed employment agreements containing noncompetition agreements. During the years in which Kitchens was employed at USMR, he held the positions of salesman and sales manager. During the years Hodgson worked for USMR, he was a salesman.

Hodgson and Kitchens resigned from their position at USMR in the summer of 2012. After leaving, Hodgson and Kitchens, along with one other person who was never employed by USMR, formed United Gold Coin & Bullion Reserve (UGCB). Hodgson and Kitchens provided UGCB with their skills as salesmen; the other principal contributed the money needed to provide UGCB's working capital.

After leaving USMR, Hodgson and Kitchens remained subject to the terms of noncompetition agreements they signed while employed at USMR. One covenant in their noncompetition agreements prohibits them, as former USMR employees, from using USMR's trade secrets or marketing techniques. Another

covenant prohibits Hodgson and Kitchens from hiring or attempting to hire current USMR employees. The restrictive covenants also prohibit Hodgson and Kitchens from buying or selling coins from persons with whom they did business or provided marketing material while employed by USMR for a period of five years.

Several weeks after the temporary injunction hearing, the trial court rendered an order granting USMR's request for temporary injunctive relief. The trial court's order restricts Hodgson and Kitchens from the following:

(i) hiring, soliciting for hire, calling on, soliciting, diverting, or working with any past, present, or anybody retained in the future as an employee, agent, representative, or consultant of [USMR], or attempting to do so, including, but not limited to [Hodgson and Kitchens];

(ii) contacting, communicating with, selling coins to and/or purchasing coins from any of [USMR's] customers that [Hodgson and Kitchens] initially contacted by utilizing [USMR's] confidential and/or proprietary information[;]

(iii) revealing the names and/or contact information of any of [USMR's] customers that [Hodgson and Kitchens] discovered through the use of [USMR's] confidential and/or proprietary information[;]

(iv) utilizing any of [USMR's] confidential and/or proprietary information[;]

(v) disclosing any of [USMR's] confidential and/or proprietary information to anyone[;] and/or

(vi) associating with or forming any other entity in the business of selling gold coins or similar items within two-hundred miles of Austin or Beaumont, Texas.

We note our jurisdiction over interlocutory appeals seeking appellate review of rulings granting temporary injunctions. *See* Tex. Civ. Prac. & Rem. Code Ann. §

3

51.014(a)(4) (West Supp. 2012). In three issues, Hodgson and Kitchens argue that the trial court's order should be dissolved.

## Standard of Review

An abuse of discretion standard governs an appellate court's review of a trial court's interlocutory ruling on a party's request for a temporary injunction. *Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978). An abuse of discretion occurs when a trial court acts in an unreasonable or arbitrary manner. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). "An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence." *Davis*, 571 S.W.2d at 862.

When a trial court has not been requested to enter findings of fact or conclusions of law, the evidence from a temporary injunction hearing is viewed on appeal in the light most favorable to the trial court's order; every reasonable inference from the evidence introduced at the temporary injunction hearing is indulged in the light that favors the trial court's ruling. *See Thomas v. Beaumont Heritage Soc'y*, 296 S.W.3d 350, 352 (Tex. App.—Beaumont 2009, no pet.). Viewing a ruling in the light most favorable to the ruling in the court below requires that we affirm the order granting temporary injunctive relief if we can do

4

so on any valid legal theory that is supported by both the pleadings and the evidence. *See id.*; *Davis*, 571 S.W.2d at 862.

A temporary injunction hearing allows the trial court to determine if the party seeking temporary injunctive relief is entitled to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.*

On appeal, the merits of the underlying case are not presented for appellate review. A trial court's ruling on a party's request for temporary injunctive relief is a preliminary decision. *See Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 882-83 (Tex. App.—Dallas 2003, no pet.). "[B]y granting a temporary injunction, a trial court does not declare that a covenant not to compete is valid." *Vaughn v. Intrepid Directional Drilling Specialists, Ltd.*, 288 S.W.3d 931, 938 (Tex. App.—Eastland 2009, no pet.).

Analysis

In issues one and two, Hodgson and Kitchens argue that USMR failed to demonstrate that it would likely succeed in preventing them from working with

5

any current or former employees of USMR. Hodgson and Kitchens argue that restraining them from working with former USMR employees is a more severe restriction than is necessary to protect USMR's business interests. Also in arguing these issues, Hodgson and Kitchens assert that no evidence was produced showing that the covenant prohibiting them from competing with USMR within two hundred miles of Austin and Beaumont is a reasonable restriction. According to Hodgson and Kitchens, the evidence from the hearing does not show that they had conducted business within the restricted territory defined by their agreements. Hodgson and Kitchens conclude that because the restrictions in their agreements were not shown to be reasonably necessary to protect USMR's business, the restrictions violate section 15.50 of the Texas Business and Commerce Code.[1] *See* Tex. Bus. & Com. Code Ann. § 15.50(a) (West 2011). When covenants are ancillary to an agreement to provide an employer with services, the Texas Business and Commerce Code requires the employer to prove that the restrictions are

---

[1]The portion of section 15.50 relevant to the appeal provides that "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code Ann. § 15.50(a) (West 2011).

6

necessary to protect its business interests. *See id.* § 15.51(b) (West 2011);[2] *see also id.* § 15.50(a).

The testimony from the hearing reflects that none of the witnesses explained how USMR's business interests would be protected by a blanket restriction preventing Hodgson and Kitchens from working with former USMR employees if they were to work together for an organization that did not compete with USMR. Additionally, there was no evidence that USMR had customers who lived within the restricted territory, nor was there any evidence showing that Hodgson and Kitchens had sold coins to any of their former customers or to persons with whom they had contact while working at USMR.

On appeal, USMR has not explained why its business interests would be protected by prohibiting Hodgson and Kitchens from working with USMR's

---

[2]We note that the noncompetition agreements prohibit Hodgson and Kitchens from working in a business similar to USMR's anywhere in the United States, Canada, or the United Kingdom. At the hearing, USMR did not request injunctive relief based on this provision of the noncompetition agreement. Nonetheless, in 2008, in a case involving two other persons who were formerly employed by USMR, we determined that "the trial court [had] abused its discretion in enjoining [Chad Poole and Terry Fendley] from engaging in any subsequent employment in [the coin and bullion] industry throughout the United States." *See Poole v. U.S. Money Reserve, Inc.*, No. 09-08-137 CV, 2008 Tex. App. LEXIS 8257, at *12 (Tex. App.—Beaumont Oct. 30, 2008, no pet.) (mem. op.). In Hodgson's and Kitchens' case, we note that the trial court's order is narrower than the one we reviewed in *Poole*, as the order under review does not generally prohibit Hodgson and Kitchens from working as salesmen in the coin and bullion business throughout the United States, Canada, and the United Kingdom.

former employees in a noncompeting business, nor has USMR pointed to evidence that explains why, given a restriction that prevents Hodgson and Kitchens from contacting their former customers, a two-hundred-mile restriction is necessary to protect USMR's business interests. For example, the record does not show that Hodgson's and Kitchens' former customers live within the restricted territory, nor does it show that USMR has a significant number of customers living within the restricted territory. Finally, the testimony does not show that Hodgson and Kitchens solicited their former USMR customers while working for UGCB.

To be reasonable, a covenant restricting an activity of an employee must be shown as having some bearing on the activities of the employer. *See* Tex. Bus. & Com. Code Ann. § 15.50(a); *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991) ("The fundamental legitimate business interest that may be protected by such covenants is in preventing employees or departing partners from using the business contacts and rapport established during the relationship of representing the accounting firm to take the firm's customers with him."). A restriction prohibiting competition in a geographical area must not impose a greater restraint than the restraint that is necessary to protect the goodwill or other business interest of the employer. *See* Tex. Bus. & Com. Code Ann. § 15.50(a). At the temporary injunction hearing, the burden of showing that the restrictions were

reasonable and that the restrictions were necessary to protect USMR's business interests was a burden that the law places on USMR. *See id.* § 15.51(b).

There is no evidence in the record showing that restrictions preventing Hodgson and Kitchens from working with a former employee of USMR in a noncompeting business are necessary to protect USMR's business interest. There is also no evidence demonstrating that the restriction prohibiting Hodgson and Kitchens from working together within two hundred miles of Austin and Beaumont are necessary to protect USMR's business interests. Based on the evidence before the trial court, we hold the trial court abused its discretion by finding that USMR would probably prevail in its effort to enforce these two restrictions. Issues one and two are sustained.

In their third issue, Hodgson and Kitchens argue the trial court's order should be dissolved in its entirety because USMR failed to demonstrate that it would suffer probable, imminent, and irreparable injuries. The record shows that Hodgson and Kitchens established a business that was competing in the same type of business as that of USMR, and that Hodgson and Kitchens intended to continue working together in that business. There was also evidence that UGCB's attempt to screen its potential customers by asking whether they had done business with USMR had failed to alert UGCB to the fact that some of its sales were people who

were customers of USMR, although in these instances the sales were not shown to have been to people who were also Hodgson's or Kitchens' former customers. Although there was no evidence indicating that Hodgson and Kitchens had sold or contacted their former customers as of the date of the hearing, the trial court could reasonably conclude that UGCB did not have sufficient policies or practices in place to prevent Hodgson and Kitchens from marketing coins and bullion to their former customers.

The evidence also shows that Kitchens, while employed by USMR, had access to USMR's entire customer database. Additionally, Kitchens agreed that he used an alias when he talked to potential customers while at UGCB; the alias Kitchens used was the same name as one of USMR's salesmen. Given UGCB's marketing practices, Kitchens' choice to use the name of one of USMR's salesmen as an alias, and the fact that UGCB was in the coin and bullion business, the threat that Hodgson and Kitchens would market coin and bullion to their former customers or to persons to whom they marketed while employed by USMR were not hypothetical concerns; they were real and ongoing. The evidence is also sufficient to support the inference that a sale to a former Hodgson's or Kitchens' customer or contact would be a sale that USMR lost. We also note that in the trial court, Hodgson and Kitchens agreed that their employment agreements prevented

10

them from marketing coins and bullion to their former customers and to persons to whom they had marketed while employed by USMR.

On this record, the trial court's finding on probable, imminent, and irreparable harm—to the extent the trial court's order prevents Hodgson and Kitchens from hiring or soliciting USMR's current employees; utilizing USMR's confidential and proprietary information; contacting, communicating, selling, or purchasing coins or bullion from former customers or persons to whom they marketed while working at USMR; and from disclosing USMR's confidential and proprietary information—is supported by the evidence. With respect to these aspects of the trial court's order, we overrule issue three.

Under the Rules of Appellate Procedure, we are required to render the judgment that the trial court should have rendered unless a remand is necessary for further proceedings. Tex. R. App. P. 43.2. In this case, we conclude that no remand is necessary. Accordingly, we dissolve that portion of the trial court's temporary injunction order that prohibits Hodgson and Kitchens from working with persons who were formerly employed by USMR; we also dissolve that portion of the temporary injunction order that prohibits Hodgson and Kitchens from working in the business of selling gold coins or similar items (but we do not dissolve the order's restriction that prevents their marketing coins and bullion to their former

11

customers or to persons to whom they marketed while working at USMR ), as well as that portion of the trial court's order that prohibits Hodgson and Kitchens from working together; finally, we dissolve that portion of the trial court's order that prevents Hodgson and Kitchens from forming a business within two hundred miles of Austin and Beaumont. Otherwise, the trial court's order is affirmed.

AFFIRMED IN PART, REVERSED AND RENDERED IN PART.


_____
HOLLIS HORTON
Justice


Submitted on May 8, 2013
Opinion Delivered June 13, 2013
Before McKeithen, C.J., Kreger and Horton, JJ.

12