**AFFIRM; and Opinion Filed March 29, 2024**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

---

**No. 05-23-00496-CV**

---

**BADGER TAVERN LP, 1676 REGAL JV, AND 1676 REGAL ROW, DALLAS, TEXAS, IN REM, Appellants**
**V.**
**CITY OF DALLAS, Appellee**

---

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-16151**

---

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Smith
Opinion by Justice Smith

In this interlocutory appeal, appellants Badger Tavern LP, 1676 Regal JV, and 1676 Regal Row, Dallas, Texas, in rem, challenge the trial court's order granting a temporary injunction to appellee City of Dallas (City). In three issues, appellants assert that the trial court granted the injunctive relief in error because (1) the City did not exhaust its administrative remedies, (2) the relief granted exceeded the relief sought, and (3) there was no evidence or argument of harm or injury. Because appellants have not shown that the trial court erred, we affirm.

## Factual and Procedural Background

1676 Regal owns real commercial property located at 1676 Regal Row in Dallas, Texas (the property), and Badger Tavern owns and operates a commercial business on the property.[1]  In 2009, the City issued a certificate of occupancy for Badger Tavern to operate an adult cabaret on the property using the business name La Zona Rosa Cabaret.  The certificate of occupancy reflects the business' use designation as "commercial amusement (inside)," which the Dallas City Code defines as "a facility wholly enclosed in a building that offers entertainment or games of skill to the general public for a fee."[2]  In 2017, Badger Tavern partially renovated the property and applied for and obtained a new certificate of occupancy.  It continued to operate an adult cabaret on the property.

In July 2021, Badger Tavern applied to the City for a certificate of occupancy record change to change the business name to La Zona Rosa dba Poker House of Dallas.  It also applied for and obtained permits for some repairs to the building.  The City requested, and Badger Tavern submitted, a land use statement and a floor plan.  The land use statement indicated that everyone entering the business would be required to purchase a membership and members could pay a rental fee for a chair in order to play card games.  The City subsequently issued a new copy of the 2017 certificate of occupancy reflecting the name change.  Badger Tavern thereafter

---

[1]  The factual background is derived from evidence admitted at the hearing on the City's request for temporary injunction.

[2]  *See* DALLAS, TEX., DALLAS CITY CODE, § 51A-4.210(b)(7)(A)(v).

–2–

ceased operating an adult cabaret and began operating a private poker club. The City sent two notices, dated December 7, 2021, and February 22, 2022, advising Badger Tavern that it was in violation of City ordinances by failing to obtain a proper certificate of occupancy before using or changing the use of the property. The City cautioned that it would file suit requesting injunctive relief if the violation was not remedied. Badger Tavern did not cease its private poker club operations or submit an application for a new certificate of occupancy.

At the hearing on the City's request for a temporary injunction, the trial court heard conflicting evidence regarding discussions between Badger Tavern representatives and City personnel during summer 2021. Michael Martinez, who was hired by Badger Tavern to help acquire the certificate of occupancy, testified that he communicated by email with Volney Willis, a City permit manager, who "walked [them] through the process" and "understood what [they] were trying to do." They followed Willis's directions, and at no time did Martinez disguise or mislead the City regarding Badger Tavern's intended use of the business as a private poker club.

Megan Wimer served as Assistant Building Official and acted as a City representative in zoning and land use matters at all times relevant to this appeal. She testified generally that the Dallas Development Code requires a business to obtain legal permission to operate in Dallas. The City issues a certificate of occupancy to certify a business' compliance with applicable codes and laws. If a business decides

–3–

to make a name change, but not to change its operations, building, or occupancy, it need only make a record change. If it makes changes to its operations, occupancy, or character of the business, a new certificate of occupancy is required.

Wimer testified that Badger Tavern's request to change the business name from La Zona Rosa Cabaret to La Zona Rosa Cabaret d/b/a Poker House of Dallas raised a red flag that it might be changing the character of operations at the property. City personnel requested additional information, including a land use statement and a floor plan, to clarify whether a new certificate of occupancy was needed. Those documents reflected that there would be a membership requirement, which in Wimer's professional experience constituted a change to the permitted use of the property. According to Wimer, someone at the City, although she could not recall who specifically, communicated to Badger Tavern that it would need to apply for a new certificate of occupancy. By approving the name change, the City was not giving Badger Tavern legal authority to change its business operations to a card room. And, by changing its business operations, Badger Tavern was no longer complying with its valid license and certificate of occupancy to operate a commercial amusement (inside) as a cabaret.

Ivan Sosa, a City code compliance inspector, testified that he had inspected the property several times, including in November 2022, and observed members of the poker club playing cards. The membership requirement was a concern to Sosa

because the land-use category on the certificate of occupancy required that the business be open to the public.

Stuart Pully, a zoning and land use consultant, testified that Badger Tavern retained him in 2021 to obtain a certificate of occupancy and "do whatever was necessary to obtain [City] approval." He met with City personnel in July and told them that Badger Tavern intended to change the business name and would need a record change to the certificate of occupancy. The City reviewed documents that Badger Tavern submitted and issued permits for work on the property. Pully testified that he asked the plans examiners if Badger Tavern would need to obtain a new certificate of occupancy and was told that that they would not because there was no change of use; that is, the use fell within the definition of commercial amusement (inside). According to Pully, a change of use, in "most cases," refers to a land use that is no longer within the same category.

In November 2022, the City initiated this action, seeking, among other things, temporary and permanent injunctive relief pursuant to sections 54.016 and 211.012(c) of the Texas Local Government Code. The City alleged that Badger Tavern was operating a commercial business on the property without a valid certificate of occupancy in violation of section 51A-1.104 and chapter 52, section 306.1 of the Dallas City Code and had changed the use or occupancy of the property

without legal approval in violation of chapter 52, section 306.2 of the Dallas City Code.[3]

Following the hearing on the City's request for a temporary injunction, the trial court granted the request and ordered, pursuant to sections 54.016, 54.018, and 211.012(c) of the local government code, that appellants cease operating a poker club or any other business operations on the property without a certificate of occupancy authorizing such use. This appeal followed.

**Standard of Review**

A temporary injunction is an extraordinary remedy that preserves the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe,* 863 S.W.2d 56, 57 (Tex. 1993) (per curiam). The status quo to be preserved by a temporary injunction is "the last, actual, peaceable, non-contested status which preceded the pending controversy." *Pierce v. State*, 184 S.W.3d 303, 308 (Tex. App.—Dallas 2005, no pet.) (quoting *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004)).

To obtain a temporary injunction, the applicant generally must plead and produce some evidence of a cause of action against the defendant, a probable right to relief, and a probable imminent, irreparable injury in the interim. *See Butnaru*, 84 S.W.3d at 204; *8100 N. Freeway Ltd. v. City of Houston*, 329 S.W.3d 858, 861

---

[3] *See* DALLAS, TEX., DALLAS CITY CODE §§ 51A-1.104(a)(3), 52-306.1, 52-306.2.

(Tex. App.—Houston [14th Dist.] 2010, no pet.). However, where a statute authorizes injunctive relief for a violation, the applicant need not prove imminent, irreparable injury. *See Butnaru*, 84 S.W.3d at 210; *Marauder Corp. v. Beall*, 301 S.W.3d 817, 820 (Tex. App.—Dallas 2009, no pet.); *8100 North Freeway*, 329 S.W.3d at 861.

A temporary injunction applicant shows a probable right of recovery by alleging a cause of action and presenting evidence that tends to sustain it. *See State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975). The applicant must present "enough evidence to raise a bona fide issue as to its right to ultimate relief." *Young Gi Kim v. Ick Soo Oh*, No. 05-19-00947-CV, 2020 WL 2315854, at *2 (Tex. App.— Dallas May 11, 2020, no pet.) (mem. op.). Because the injunction only preserves the status quo pending final trial, the applicant need not prove that it will ultimately prevail at trial on the merits. *Walling*, 863 S.W.2d at 58.

"Whether to grant or deny a temporary injunction is within the trial court's sound discretion." *Butnaru*, 84 S.W.3d at 204. We may not substitute our judgment for that of the trial court unless the court's decision "was so arbitrary that it exceeded the bounds of reasonable discretion." *RWI Constr., Inc. v. Comerica Bank*, 583 S.W.3d 269, 274 (Tex. App.—Dallas 2019, no pet.). In reviewing the trial court's decision, we draw all legitimate inferences from the evidence in the light most favorable to the court's order. *Id.* There can be no abuse of discretion when the trial court considers genuinely conflicting evidence. *See id.* The trial court abuses its

discretion by "misappl[ying] the law to established facts or when the evidence does not reasonably support the trial court's determination of the existence of probable injury or probable right of recovery." *Id.* at 274–75.

When, as here, no findings of fact or conclusions of law are filed, we will uphold the trial court's order on any legal theory supported by the record. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). Findings of fact and conclusions of law embedded in a trial court's temporary injunction order may be helpful, but are not binding, in reviewing the court's exercise of its discretion. *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003, no pet.); *Communicon, Ltd. v. Guy Brown Fire & Safety, Inc.*, No. 02-17-00330-CV, 2018 WL 1414837, at *6 (Tex. App.—Fort Worth Mar. 22, 2018, no pet.) (mem. op.).

### Exhaustion of Remedies

In their first issue, appellants assert that the trial court lacked jurisdiction to issue the temporary injunction because the City failed to first exhaust its administrative remedies by appealing to the Board of Adjustment. We disagree.

Texas Local Government Code chapter 211 authorizes a municipality to promulgate zoning regulations and establish a board of adjustment. TEX. LOC. GOV'T CODE ANN. §§ 211.008, 211.012(a). Among other things, the board of adjustment has the power "to hear and decide an appeal that alleges error in an order, requirement, decision, or determination made by an administrative official in the enforcement of [zoning ordinances]." *Id.* § 211.009(a)(1); *see also* DALLAS, TEX.,

DALLAS CITY CODE, § 51A-3.102(a), (d)(1) (creating board of adjustment, providing board with authority to hear and decide appeals from an administrative official's zoning enforcement decisions, and defining administrative official as "that person within a city department having the final decision-making authority within the department relative to the zoning enforcement issue").

Generally, a party must exhaust administrative remedies available under chapter 211 before seeking judicial review of an administrative official's decision. *See City of Grapevine v. Muns*, 651 S.W.3d 317, 331 (Tex. App.—Fort Worth 2021, pet. denied). The failure to do so deprives the trial court of subject-matter jurisdiction to decide the case. *Id.*; *Murphy v. City of Galveston*, 557 S.W.3d 235, 241 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Appellants do not identify any specific zoning enforcement decisions by an administrative official that the City was required to appeal to the board of adjustment. Instead, they assert that the City was required to appeal to the board of adjustment "if there were an error in the requirements, contractor authorizations, issuance of permits, email communications, record change or the land use statement that the [City] approved[.]" And, as support, they cite to several cases in which the City "went through the administrative process" to determine whether a permit was issued in error. In each of the cases cited by appellants, however, the City had either

revoked a certificate of occupancy or refused to issue a certificate of occupancy and the holder of the certificate or applicant appealed to the adjustment board.[4]

Here, Badger Tavern changed its business operations from an adult cabaret to a private poker club, but never applied for a new certificate of occupancy. The City alleges no error with respect to an administrative official's zoning enforcement decision. Instead, the City alleges that Badger Tavern is in violation of City zoning ordinances by operating a private poker club on the property when its valid, existing certificate of occupancy does not authorize that use. Because the City is not appealing an alleged error in a zoning enforcement decision by an administrative official, it was not required to raise the matter with the board of adjustment prior to initiating this suit. Accordingly, we conclude the trial court had jurisdiction over the dispute. We overrule appellant's first issue.

## Grounds for Temporary Injunctive Relief

Appellants next contend that the trial court erred in granting injunctive relief under sections 54.016 and 54.018 of the Texas Local Government Code. In their

---

[4] *See Espinoza v. Board of Adjustment & TCHDallas2, LLC*, Cause No. DC-22-03741, in the 14th Judicial District Court of Dallas County; *Champions Dallas LLC v. City of Dallas and Board of Adjustment*, Cause No. DC-21-15999, in the 193rd Judicial District Court of Dallas County; *KBKM Entertainment LLC d/b/a Dallas Poker Club v. City of Dallas and Board of Adjustment*, Cause No. DC-21-17107, in the 191st Judicial District Court of Dallas County; *Fifty-Two Social and Dining LLC and SB Capital LLC d/b/a Sportsbook Poker Club v. City of Dallas*, *Megan Wimer and David Session*, Cause No. DC-21-18124, in the 95th Judicial District Court of Dallas County.

second issue, appellants assert that the City never requested injunctive relief under section 54.018, and in their third issue, appellants cite the lack of evidence of a substantial danger of injury or an adverse health impact to support a temporary injunction under section 54.016.

The City sought temporary and permanent injunctive relief pursuant to local government code sections 54.016 and 211.012(c). Although the City sought a temporary restraining order under section 54.018,[5] that statute was not a basis for its request for a temporary injunction. And, we agree with appellants that the City did not present evidence to show "substantial danger of injury or an adverse health impact" as required to obtain injunctive relief under section 54.016.[6] *See* TEX. LOC. GOV'T CODE ANN. § 54.016(a).

The trial court, however, also granted the temporary injunction based on section 211.012(c), which authorizes the City to pursue an injunction to address violations of its zoning ordinances and does not require a showing of substantial danger of injury or adverse health impact.[7] *Id.* § 211.012(c). Appellants have not

---

[5] Section 54.018 authorizes a municipality to "bring an action to compel the repair or demolition of a structure or to obtain approval to remove the structure and recover removal costs." TEX. LOC. GOV'T CODE ANN. § 54.018(a).

[6] Section 54.016 provides that, "[o]n a showing of substantial danger of injury or an adverse health impact to any person or to the property of any person other than the defendant, the municipality may obtain . . . an injunction that: (1) prohibits specific conduct that violates the ordinance; and (2) requires specific conduct that is necessary for compliance with the ordinance." *Id.* § 54.016(a).

[7] Section 211.012(c) provides as follows:

> If a building or other structure is erected, constructed, reconstructed, altered, repaired, converted, or maintained or if a building, other structure, or land is used in violation of this

–11–

raised a separate issue challenging the trial court's reliance on local government code section 211.012(c) as a statutory basis for the temporary injunction. Their brief, however, includes an argument that the record is legally and factually insufficient to support findings included in the trial court's temporary injunction order. Specifically, they assert that the evidence does not support a finding that the City notified appellants in summer 2021 that the proposed changes on the property required a new certificate of occupancy and the order "omit[s] critical facts regarding the permits, applications, authorizations, plans submitted and approved, and communications between" Badger Tavern and the City during May through July 21. According to appellants, the City accepted its land use statement, approved the record name change, and thereafter approved permits for the property, which Badger Tavern asserts "would not have occurred if there was an issue with the certificate of occupancy."

---

subchapter or an ordinance or regulation adopted under this subchapter, the appropriate municipal authority, in addition to other remedies, may institute appropriate action to:

    (1) prevent the unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance, or use;

    (2) restrain, correct, or abate the violation;

    (3) prevent the occupancy of the building, structure, or land; or

    (4) prevent any illegal act, conduct, business, or use on or about the premises.

TEX. LOC. GOV'T CODE ANN. § 211.012(c).

To the extent that appellants take issue with findings embedded in the trial court's temporary injunction order, we note that those findings do not carry the same weight on appeal as findings made under Texas Rule of Civil Procedure 296 and are not binding. *See Tom James*, 109 S.W.3d at 884; TEX. RS. CIV. P. 296, 299a. In any event, the City presented some evidence to support the trial court's finding that "[t]he City notified [appellants] in summer 2021 that their proposed changes on the [p]roperty required a new Certificate of Occupancy that legally authorized a change in use." Wimer testified that, when Badger Tavern applied to change the name of the business, it raised "red flags" and the City requested additional information, from which it determined that the change "went beyond the scope of a name change, that this [was] a change of the business operations, the character, the use, the occupancy of the building. And it was communicated that to do that they would need to a [sic] apply for a new certificate of occupancy." To be sure, there was conflicting evidence; Pully testified that City plans examiners told him that Badger Tavern would not need to obtain a new certificate of occupancy because there was no change of use. However, we defer to the trial court's resolution of conflicting evidence, *see id.* at 883, 888, and conclude that there was evidence to support the trial court's finding that the City advised Badger Tavern that it would have to apply for a new certificate of occupancy during summer 2021 when Badger Tavern sought the record change.

–13–

We further conclude that the City presented some evidence to show that Badger Tavern, by operating a private poker club without applying for a new certificate of occupancy, was in violation of municipal zoning ordinances and, therefore, the City was entitled to a temporary injunction under section 211.012 of the local government code.[8] *See 8100 North Freeway*, 329 S.W.3d at 861 (when applicant shows a violation for which a statute authorizes injunctive relief, it need not prove imminent, irreparable injury). Specifically, the Dallas Development Code states that, "[e]xcept as provided in [chapter 52, section 306.1], a person shall not use or occupy or change the use or occupancy of a building, a portion of a building, or land without obtaining a certificate of occupancy from the building official in compliance with [chapter 52, section 306.1]." DALLAS, TEX., DALLAS CITY CODE § 51A-1.104. Section 306.1 of the City of Dallas Administrative Procedures for the Construction Codes requires a new certificate of occupancy any time there is a change in the existing occupancy classification or zoning use. *Id.* § 52-306.1.[9]

---

[8] In their third issue, appellants also contend that a showing of harm was required because the City sought a mandatory injunction. Generally, "when a temporary injunction is mandatory (i.e., requires conduct) rather than prohibitive (i.e., forbids conduct), the applicant must show that the 'mandatory order is necessary to prevent irreparable injury or extreme hardship.'" *Veterinary Specialists of N. Tex., PLLC v. King*, No. 05-21-00325-CV, 2022 WL 406095, at *4 (Tex. App.—Dallas Feb. 9, 2022, no pet.) (mem. op.) (quoting *Retail Servs. WIS Corp. v. Crossmark, Inc.*, No. 05-20-00937-CV, 2021 WL 1747033, at *7 (Tex. App.—Dallas May 4, 2021, pet. denied) (mem. op.)). This requirement, however, does not apply in this case, where the City sought injunctive relief pursuant to a statute specifically authorizing that relief. *See 8100 North Freeway*, 329 S.W.3d at 861; *e.g.*, *Rhone v. City of Texas City*, 657 S.W.3d 857, 863 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (concluding that plaintiff could obtain mandatory injunctive relief under local government code section 54.016(a) without showing extreme hardship, extreme necessity, or irreparable injury).

[9] "No structure or land shall be used or occupied, no change in the existing occupancy classification, zoning use, or the tenant or occupant of a structure or portion of a structure shall be made, and no floor area increases or decreases of any existing tenancy area of a structure shall be used or occupied, until the building

–14–

The commercial amusement (inside) use classification falls under retail and personal service uses, which are "retail or service establishments dealing directly with consumers." *See id.* § 51A-4.210(a)(1). Commercial amusement (inside) is defined as "a facility wholly enclosed in a building that offers entertainment or games of skill to the general public for a fee. This use includes but is not limited to an adult arcade, adult cabaret, adult theater, amusement center, billiard hall, bowling alley, children's amusement center, dance hall, motor track, or skating rink." *Id.* §51A-4.210(b)(7)(A)(v). There was evidence, however, to show that Badger Tavern was operating a poker club on the property under the certificate of occupancy it obtained to operate an adult cabaret. And, the business was no longer open to the general public; it required patrons to purchase memberships.

Based on the evidence presented, and drawing all legitimate inferences from the evidence in the light most favorable to the trial court's order, we conclude that there was enough evidence to raise a bona fide issue, and support the trial court's determination, that Badger Tavern changed the use of the property without obtaining a new certificate of occupancy and thereafter used the property without a valid certificate of occupancy in violation of sections 51A-1.104 and 52-306.1. Because the City alleged a cause of action and presented evidence tending to sustain it, the

official has issued a certificate of occupancy and a fee has been paid as required in Section 303 of this chapter." DALLAS, TEX., DALLAS CITY CODE § 52-306.1.

–15–

trial court did not abuse its discretion in granting the temporary injunction under section 211.012(c) of the local government code.

Here, we must uphold the trial court's decision to grant the temporary injunction on any legal theory supported by the record. *See Davis*, 571 S.W.2d at 862. Because the City pleaded and proved facts to show it was entitled to injunctive relief under section 211.112(c), any error by the trial court in also granting relief pursuant to sections 54.016 and 54.018 is harmless. *See Washington v. Associated Builders & Contractors of S. Texas Inc.*, 621 S.W.3d 305, 311–12 (Tex. App.—San Antonio 2021, no pet.) (citing TEX. R. APP. P. 44.1(a)(1) (harmless error)). Accordingly, we overrule appellants' second and third issues.

## Conclusion

We affirm the trial court's temporary injunction order.

/Craig Smith/
CRAIG SMITH
JUSTICE

230496F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BADGER TAVERN LP, 1676
REGAL JV, AND 1676 REGAL
ROW, DALLAS, TEXAS, IN REM,
Appellants

No. 05-23-00496-CV     V.

CITY OF DALLAS, Appellee

On Appeal from the 134th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-16151.
Opinion delivered by Justice Smith.
Justices Molberg and Reichek
participating.

      In accordance with this Court's opinion of this date, the trial court's temporary injunction order is **AFFIRMED**.

      It is **ORDERED** that appellee CITY OF DALLAS recover its costs of this appeal from appellants BADGER TAVERN LP, 1676 REGAL JV, AND 1676 REGAL ROW, DALLAS, TEXAS, IN REM.

Judgment entered this 29th day of March 2024.

–17–